UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 06-CV-3589 (JFB) (ARL)

———————————

MARY HOLLMAN, Individually and
as the Administrator of the Estate of SAMUEL A. COX,
and the Estate of SAMUEL A. COX, on behalf of decedent JOHN COX,

Plaintiff,

VERSUS

COUNTY OF SUFFOLK,
SUFFOLK COUNTY POLICE DEPARTMENT, Suffolk Homicide Commander Det. Lieutenant
JACK FITZPATRICK, in his individual and official capacity,
POLICE OFFICERS "JOHN DOE" 1 through 10, whose names are known by the Defendants but
as of yet are not known by Plaintiffs, OFFICE OF THE SUFFOLK COUNTY MEDICAL
EXAMINER, CHARLES WETLI, M.D., Medical Examiner, in his individual and official
capacity, JAMES C. WILSON, M.D., Deputy Medical Examiner, in his individual and official
capacity, BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER, SOUTH COUNTRY
AMBULANCE, EMT L. SMITH, in his individual and official Capacity, EMT D. TOTONG,
in his individual and official capacity, EMT S. AL QADRI, in his individual and official
capacity, and AMBULANCE DRIVER M. SNEED, in his individual and official capacity,

Defendants.

———————————

MEMORANDUM AND ORDER
January 27, 2011

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Mary Hollman (hereinafter, "plaintiff") brought the instant action on behalf of decedent John Cox (hereinafter, "Cox" or "decedent") regarding the incidents surrounding Cox's death on April 22, 2005. Plaintiff seeks damages against a number of defendants, including the County of Suffolk, certain Suffolk County Police Officers, the Office of the Suffolk County Medical Examiner and several of its employees, Brookhaven Memorial Hospital Medical Center, and South Country Ambulance and certain emergency medical technicians ("EMTs") who are members of the South

Country Ambulance company, under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and various New York state law causes of action, including negligence and wrongful death. Defendant Brookhaven Memorial Hospital Medical Center (hereinafter, "defendant" or "Brookhaven") now moves for summary judgment on all claims, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the motion is granted in its entirety, and Brookhaven is terminated from the above-captioned case.

I. BACKGROUND

A. Facts

The facts described below are taken from the parties' depositions, affidavits, and exhibits, and the parties' respective Rule 56.1 statement of facts ("Def.'s 56.1" and "Pl.'s 56.1"), as well as plaintiff's counter-statement of facts ("Pl.'s Counter 56.1").[1] Unless otherwise noted, the facts are undisputed. Upon consideration of the motions for summary judgment, the Court shall construe the facts in the light most favorable to plaintiff, the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

On April 22, 2005, Cox, a thirty-nine year old African American, was involved in a confrontation with officers from the Suffolk County Police Department, at a residence in Bellport, NY. (Def.'s 56.1 ¶ 2, Pl.'s Counter 56.1 ¶ 107.) During the confrontation, the officers used a Taser gun multiple times in their attempts to subdue Cox. (Def.'s Mem. Ex. R.; Am. Compl. ¶¶ 49-50.) At approximately 8:23 p.m., an ambulance was dispatched from the volunteer South Country Ambulance Company to the residence, responding to a call regarding a male assault victim. (Pl.'s Counter 56.1 ¶¶ 22, 23.) The ambulance and volunteer EMTs arrived at the residence at approximately 8:27 p.m.. (*Id.* ¶ 24.) While at the residence, Cox was placed on an ambulance stretcher face down, with both legs shackled to the stretcher and held down by three restraints. (*Id.* ¶ 14.) Cox was then placed in the ambulance on the stretcher and the ambulance departed for Brookhaven with Cox and the officers at approximately 8:33 p.m. (*Id.* ¶ 24.) According to the Prehospital Care Report prepared by the EMTs, the ambulance arrived at Brookhaven

---

[1] The Court notes that the document submitted by defendant Brookhaven entitled "56.1 Statement" is a recitation of facts unsupported by any citation to the record, in contravention of Local Civil Rule 56.1. However, the memorandum of law enumerates the same facts with appropriate record citations, which cures any defect in the defendant's Rule 56.1 statement, and so the Court overlooks defendant's failure to comply with the local court rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *see also Capellupo v. Nassau Health Care Corp*., No. 06-CV-4922 (JFB), 2009 WL 1705749, at *1 n.3 (E.D.N.Y. June 16, 2009) (excusing defendant's failure to include record citations in Rule 56.1 statement, where appropriate record citations were included elsewhere in attorney's submissions); *cf. Williams v. R.H. Donnelley, Inc.,* 199 F. Supp. 2d 172, 174 n.1 (S.D.N.Y. 2002) (excusing failure to submit statement pursuant to Local Civil Rule 56.1 where the facts were set forth in the party's memorandum of law).

at approximately 8:42 p.m. (Def.'s 56.1 ¶ 6; Pl.'s Counter 56.1 ¶¶ 44.)[2]

After arriving at Brookhaven, Cox was transported on the stretcher to an emergency trauma room in the company of the police officers, including one which had his hand on the base of Cox's neck. (Pl.'s Counter 56.1 ¶ 45.) Plaintiff alleges that Cox was not combative at any time after he was removed from the ambulance. (Pl.'s Counter 56.1 ¶ 49.) According to Brookhaven's hospital records, Cox was received face down with his hands in handcuffs over his head, and additional restraints on both ankles. (Def.'s 56.1 ¶ 16, 64; Def.'s Ex. C.) The records also indicate that he was surrounded by eight to ten police officers at the time. (*Id.*) At approximately 8:51 p.m., a request was made to the officers by a registered nurse to place Cox face up on a hospital stretcher, but it is undisputed that the police officers informed the nurse that they would not permit Cox to be moved until hospital restraints were obtained. (Def.'s 56.1 ¶ 9; Def.'s Exs. C, F, L; Pl.'s Counter 56.1 ¶ 64.) While hospital staff was attempting to obtain restraints, EMT Smith observed that Cox was not moving or speaking, and one of the police officers was still holding the back of his neck. (Pl.'s Counter 56.1 ¶ 48.) By approximately 8:53 p.m., hospital staff returned with restraints, Cox's handcuffs were removed, and he was turned over. (Def.'s 56.1 ¶¶ 9, 10; Pl.'s Counter 56.1 ¶ 50.) At that point, the hospital staff noticed no rise in Cox's chest and that he was in cardiac arrest. (Def.'s 56.1 ¶ 10; Pl.'s Counter 56.1 ¶ 50.). The hospital's medical staff proceeded to immediately provide cardiopulmonary resuscitation efforts, and provided other emergency treatment. (Def.'s 56.1 ¶ 11.) Dr. Joseph Sachter arrived in the emergency room at approximately 8:54 p.m., when Cox was already in cardiac arrest with no pulse nor any spontaneous respirations. (Def.'s 56.1 ¶ 60.)

Three physicians, a respiratory technician and several nurses and nurses aids participated in the resuscitation efforts. (*Id.* ¶ 12.) During these efforts, Cox was intubated, administered multiple doses of eponephrine, and defibrilation was attempted several times, but Cox could not be revived. (*Id.*) Bicarbonate, atropine, amiodorane, magnesium sulfate, and glucagon were also administered, and pericardiocentesis was attempted. (*Id.*). Despite these efforts, Cox was pronounced dead at 9:34 p.m. (*Id.* ¶ 14.)

The report of the Suffolk County Medical Examiner's Officer concluded that Cox's death was accidental, and that cocaine intoxication was a contributing factor. (Def.'s Ex. P.) During the resuscitation efforts, Nurse Orlando, who was responsible for removing decedent's clothes, claimed to find a small foil packet containing cocaine within decedent's wallet, which he turned over to the police. (Pl.'s Counter 56.1 ¶ 130.) During resuscitation efforts, Dr. Sachter requested a urine toxicology report that would have revealed whether Cox was affected by cocaine, but that test was never conducted. (Pl.'s Counter 56.1 ¶ 39; Pl.'s Ex X.)

---

[2] Further detail regarding the alleged interactions of Cox, the police officers, and the EMTs described in connection with the Ambulance Defendants' motion for summary judgment, which remain pending and is not addressed in this Memorandum and Order. It is undisputed that both at the residence and during transport, the police officers repeatedly ordered the EMTs on the scene not to provide medical treatment, claiming that decedent was too violent.

3

B. Procedural History

Plaintiff filed the complaint in the instant action on July 21, 2006. An amended complaint was filed on November 10, 2006. On April 29, 2009, Brookhaven filed the instant motion for summary judgment. Plaintiff filed opposition papers to the motion for summary judgment on July 1, 2009, and Brookhaven filed its reply papers on July 30, 2009. The Court held oral argument on the instant motion, and other related motions on August 24, 2009. Brookhaven filed a sur-reply on January 14, 2010. This matter is fully submitted.[3]

## II. STANDARD OF REVIEW

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying

---

[3] In particular, at the November 10, 2010 conference, Brookhaven orally renewed its motion for summary judgment and counsel for Brookhaven and plaintiff both agreed, as discussed *infra*, although discovery related to plaintiff's expert submissions is ongoing, Brookhaven's motion of summary judgment is fully submitted and the prior and anticipated expert submissions do not pertain to the claims against Brookhaven.

4

supporting arguments or facts." *BellSouth Telecomm., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### III. DISCUSSION

Plaintiff alleges federal causes of action for violations of Cox's civil rights under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 against Brookhaven. In addition, plaintiff alleges causes of action under New York common law for negligence and wrongful death. For the reasons discussed below, the Court finds that summary judgment should be granted on all of plaintiff's claims as against Brookhaven.

### A. Claims Arising Under 42 U.S.C. § 1983

In order to prevail on a federal civil rights action under Section 1983, a plaintiff must demonstrate: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). However, even if a plaintiff has adequately alleged a constitutional injury, a Section 1983 claim cannot be successful unless it can be demonstrated that such injury was caused by a party acting under the "color of state law," and thus the central question is whether the alleged infringement of federal rights is "fairly attributable to the State." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action.").

It is axiomatic that private citizens and entities are not generally subject to Section 1983 liability. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323-34 (2d Cir. 2002); *Reaves v. Dept. of Veterans Affairs,* No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009) ("Purely private conduct is not actionable under § 1983, 'no matter how discriminatory or wrongful.'") (quoting *Am. Mfrs. Mut. Ins. Co v. Sullivan*, 526 U.S. 40, 50 (1999)). However, "the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate.' ('the public function test')." *Sybalski v. Indep. Gr. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)); *see also Luciano v. City of N.Y.*, No. 09-CV-0539 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009) (stating that a private entity may only be considered a state actor for the purposes of § 1983 if the private entity fulfills one of the "state compulsion," "public function" or "close nexus" tests); *accord Faraldo v. Kessler*, No. 08-CV-0261 (SJF), 2008 WL 216608, at *4 (E.D.N.Y. Jan. 23, 2008). "It is not enough, however, for a

plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Sybalski*, 546 F.3d at 258 (citing *Schlein v. Miford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977) (emphasis in original)). A plaintiff "bears the burden of proof on the state action issue." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990), *cert. denied*, 499 U.S. 960 (1991).

In the instant case, it is undisputed that Brookhaven is a non-profit, private community hospital. (Def.'s Ex. M.) "'As a general rule, private hospitals do not act under the color of law for § 1983 purposes.'" *Sykes v. McPhilliips*, 412 F. Supp. 2d 197, 200-01 (N.D.N.Y. 2006) (quoting *Okunieff v. Rosenberg*, 996 F. Supp. 343, 356 (S.D.N.Y. 1998)); 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 5.18 at 5-183 (4th ed. 2003) ("Private hospitals, however, are consistently held not to be engaged in state action even if they receive substantial government funding and are subject to extensive government regulations.") (collecting cases). Plaintiff argues, however, that Brookhaven should be considered to be acting under the color of state law, pursuant to the public function, symbiotic relationship,[4] and joint action tests. For the reasons stated below, the Court concludes that plaintiff has failed to put forth evidence that a rational jury could conclude that Brookhaven acted under the color of state law. Thus, plaintiff's § 1983 claims cannot survive summary judgment.

1. Public Function Test

The public function exception to the rule that private conduct is not ordinarily actionable under § 1983 is narrow. As the Supreme Court has instructed, "the relevant question is not simply whether a private group is serving a 'public function' . . . [T]he question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1983) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)) (emphasis added); *accord Sybalski*, 546 F.3d at 259; *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (finding no state action under public function test where function at issue not "traditionally associated with sovereignty") (internal citation and quotation marks omitted).

Plaintiff's claim—namely, that the public function test applies to categorize Brookhaven as a state actor for § 1983 purposes—cannot survive summary judgment because she has failed to advance any concrete argument at all to demonstrate that the hospital services provided by Brookhaven are the traditional exclusive prerogative of the state. In fact, the Second Circuit has held that general hospital functions are generally not "traditionally associated with sovereignty" under the public function test. *See Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 429 (2d Cir. 1977) ("Although the activities of [private hospital] are clearly 'affected with a public interest' the functions performed by it have not been 'traditionally associated with sovereignty,'

---

[4] Plaintiff actually asserts that Brookhaven is a state actor under the "close nexus" test, but in support of such proposition cites *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), which addressed the "symbiotic relationship" test instead. (Pl.'s Mem. of Law in Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Pl.'s Mem.") at 4-5.)

6

and have long been relegated to the private domain, rather than treated as 'traditionally the exclusive prerogative of the State' . . . [t]hus, its activities are not 'so clearly governmental in nature' as to amount to a public function.'"); *see also Barrett v. United Hospital*, 376 F. Supp. 791, 799 (S.D.N.Y. 1974) (noting that "[t]raditionally, . . . the provision of medical services has been a matter largely in the private domain"; declining application of public function exception to private hospital). Although courts have sometimes found non-public medical providers to be state actors when they provide medical care to inmates at a prison facility, *see, e.g., West v. Atkins*, 487 U.S. 42 (1988), or outside of a prison pursuant to a contract, *see, e.g., McKenney v. Greene Acres Manor*, 650 A.2d 699, 702 (Me. 1994), neither scenario is implicated by the instant case, and courts have held that the provision of medical care by a private hospital to an individual in police custody on the same terms as the hospital would provide to the public at large does not satisfy the state action test. *See, e.g., Kavazanjian v. Rice*, No. 03-CV-1923 (FB), 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Providing isolated emergency treatment to a prisoner on equal terms with the general public . . . does not constitute state action.") (citation omitted); *see also Sykes v. McPhillips*, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006) (inmate hospital not state actor for § 1983 purposes where it provided medical care to prisoner brought to it by state for emergency medical treatment); *Morse v. City of N.Y.*, No. 00-CV-2528, 2001 WL 968996, at *8 (S.D.N.Y. Aug. 24, 2001) (noting that fact that plaintiff was brought to hospital from police custody insufficient to transform private hospital and staff into state actors for § 1983 purposes).[5]

---

[5] Plaintiff cites no authority for the proposition that Brookhaven should be considered a state actor under the public function test, and only attempts to distinguish the cases cited by Brookhaven on the basis that those cases did not involve allegations of racial discrimination. Although plaintiff correctly notes that the Second Circuit in *Schlein* recognized "the applicability of a less strict state action standard where racial discrimination is alleged," 561 F.2d 427, 428 n.5 (2d Cir. 1977), plaintiff has still failed to demonstrate that the public function exception applies. First, as discussed in more detail *infra*, plaintiff has not provided *any* evidence from which a reasonable jury could find that Brookhaven's acts were motivated by invidious race or class-based discrimination; rather, plaintiff relies on conclusory allegations and notes the fact that Brookhaven was aware that Cox was African American, which are clearly insufficient to survive summary judgment. *Cf. Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (affirming grant of summary judgment dismissing § 1985(3) claim, which requires evidence of discriminatory animus, where there was no evidence in the record to demonstrate that the defendant's alleged unconstitutional actions occurred because of plaintiff's race); *Washington v. City of N.Y.*, No. 05-CV-8884 (LAP), 2009 WL 1685947, at *7 (S.D.N.Y. June 5, 2009) (granting summary judgment as to § 1981 claim where plaintiff had no evidence of discriminatory animus other than speculation and conclusory allegations); *accord Nasca v. Town of Brookhaven*, No. 05-CV-0122 (JFB), 2008 WL 4426906, at *15 (E.D.N.Y. Sept. 25, 2008). Moreover, assuming that merely providing conclusory allegations of racial discrimination allows the application of a less strict state action standard, plaintiff still has not met such lesser burden to demonstrate that the public function exception is applicable, because, as stated *supra*, she has not provided *any* argument (or evidence) that Brookhaven provides functions which are the exclusive prerogative of

Because plaintiff has merely made a conclusory allegation that the public function test is applicable, any claim that Brookhaven acted under color of state law under that test, cannot survive summary judgment.

2. Symbiotic Relationship Test

Furthermore, the Court also concludes that no rational jury could conclude that Brookhaven is a state actor for § 1983 purposes under the "symbiotic relationship" test established by the United States Supreme Court in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961).

According to *Burton,* actions of a private party can be considered state action if the state has "so far insinuated itself into a position of interdependence with [the acting party] that it must be recognized as a joint participant in the challenged activity . . ." 365 U.S. at 725. The Supreme Court applied this test in *Burton* to find that a private restaurant located within a public parking garage, which discriminated based on race, was involved in state action because mutual benefits were conferred, and the restaurant operated physically and financially "as an integral part of a public building devoted to a public parking service." *Id.* at 724. In *Janusaitis v. Middlebury Volunteer Fire Department*, 607 F.2d 17, 23 (2d Cir. 1979), the Second Circuit applied the *Burton* symbiotic relationship test to find state action on the part of a volunteer fire department, where the state was extensively involved and intertwined with the fire company, noting that the fire company occupied land and buildings owned by the town, used equipment owned by the town, and

---

the state that were involved in the alleged constitutional injuries.

had its operations overseen by the locality (which retained final approval regarding the selection of the company's chief in command).

In attempting to assert the existence of a symbiotic relationship between Brookhaven and Suffolk County, plaintiff solely relies upon a statements made on Brookhaven's website, that it has "a 30-year partnership with Suffolk County," and "has established a leadership position in health promotion, prevention and education" in the twenty-eight communities it serves throughout Suffolk County. (Pl.'s Mem. at 5-6; Pl.'s Ex. EE.)

As an initial matter, the Court finds that the statement on the website regarding a "partnership" between Brookhaven and Suffolk County, is insufficient as a matter of law to establish that Brookhaven and the state are so interdependent such that the symbiotic relationship test is applicable. First, that statement does not indicate that Suffolk County had a *direct proprietary* interest in the operations of Brookhaven, a requirement deemed critical by Supreme Court and Second Circuit precedent subsequent to *Burton*. *See Rendell-Baker*, 457 U.S. at 842-43 (declining from finding symbiotic relationship, distinguishing *Burton* on the basis that the private party in that case was located on public property and rent payments directly supported the public entity); *Hadges*, 918 F.2d at 1082 ("In contrast to *Burton,* the State in the instant case does not have a proprietary interest in [private party defendant].") *accord Calderon v. Burton*, 457 F. Supp. 2d 480, 488 (S.D.N.Y. 2006); 1 Martin A. Schwartz, *Section 1983 Litigation: Claims and Defenses* § 5.13[A] at 5-90-5-91, 5-94 (4th ed. 2003) ("The lower federal courts generally follow the present Supreme Court's reading of *Burton* that the most significant fact that led to

8

the finding of state action was the public authority's profiting from the restaurant's discrimination."). In the instant case, unlike *Janusaitis*, there is no indication that the state owned the land or the equipment used by the Brookhaven, or that it was directly managed or operated by government officials. *See Forbes v. City of N.Y.*, No. 05-CV-7331 (NRB), 2008 WL 3539936, at *7 (S.D.N.Y. Aug. 12, 2008) ("[T]he weight of authority suggests that *Burton* itself is highly circumscribed authority . . . [w]hen courts do apply the symbiosis factor, they often examine whether the government has control over the private actor's 'day-to-day' operations and whether the government shares in any profits the private entity has generated *from the challenged conduct*.") (internal citations and quotation marks omitted) (emphasis in original); *McKinney v. West End Voluntary Ambulance Assoc.*, 821 F. Supp. 1013, 1019 (E.D. Pa. 1992) (rejecting application of *Burton* symbiotic relationship doctrine to volunteer ambulance company that owned building equipment, and did not have its membership appointed by government officials).

Similarly, the other statement on the website, indicating that Brookhaven has a "leadership" role in providing health services to a number of communities in Suffolk County, does not establish that the state has a direct pecuniary interest in, or extensive state management control or influence over, Brookhaven. The mere fact that Brookhaven may provide important health benefits to the members of the community is insufficient to convert it into a state actor for § 1983 purposes. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 56 (1999) ("'The fact 'that a private entity performs a function which serves the public does not make its acts governmental action'") (quoting *San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 544 (1987)). Further, courts have refrained from classifying private hospitals as state actors, even where they retain a monopoly on the provision of medical services in a particular area. *See Schlein*, 561 F.2d at 429 (private hospital not state actor under public function test, even assuming that it was the sole medical provider in the area); *see also Monaco v. Stone*, No. 98-CV-3386, 2002 WL 32984617, at *27 (E.D.N.Y. Dec. 20, 2002) (noting that fact that municipal and private hospitals perform nearly all civil commitments in New York City did not transform commitments into state action); *accord Barrett*, 376 F. Supp. at 799.

Overall, plaintiff's sole reliance on a couple of scattered statements on Brookhaven's website falls far short of the evidence required to allow a rational jury to conclude that the symbiotic relationship exception to the state action requirement should apply to the instant case. In fact, courts have consistently rejected the application of the symbiotic relationship test in situations in which the evidence indicated a significantly greater degree of interdependence than that demonstrated by Brookhaven's website. *See, e.g., Blum v. Yatresky*, 457 U.S. 991 (1982) (rejecting argument that state subsidization of operating and capital costs of nursing homes, payment of the medical expenses of more than 90% of the patients, and the licensing of such facilities created symbiotic relationship between the State and homes); *Archer v. Economic Opportunity Com'n of Nassau Co., Inc.*, 30 F. Supp. 2d 600, 605 (E.D.N.Y. 1988) (rejecting application of symbiotic relationship test where private entity received 95 percent of funding from state and was subject to regulation; "[t]he United States

9

Supreme Court has repeatedly held that a private entity's dependence on government funding does not make the organization a state actor"); *accord McKinney*, 821 F. Supp. at 1019-1020 (volunteer ambulance company).

Accordingly, plaintiff has failed to provide sufficient evidence from which a rational jury could conclude that Brookhaven should be considered to have been operating under the "color of state law" pursuant to the symbiotic relationship test.

### 3. Joint Action/Compulsion Tests

Under the "joint action" doctrine, a private actor can be found "to act under color of state law for § 1983 purposes if . . . [the private party] is a willful participant in joint action with the State or its agents"). *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the police." *Forbes*, 2008 WL 3539936, at *5 (citing *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir. 1999)). To establish joint action, "a plaintiff must show that the private citizen and the state official shared a common unlawful goal." *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996); *see also Burrell v. City of Mattoon*, 378 F.3d 642, 650 (7th Cir. 2004) (under joint action requirement, plaintiff must show that "both public and private actors share a common, unconstitutional goal"). "However, generalized or conclusory allegations of conspiracies are insufficient to sustain a section 1983 claim, and complaints that lack further specificity or 'specific instances of misconduct' are subject to dismissal." *Vazquez v. Combs*, No. 04-CV-4189 (GEL), 2004 WL 2404224, at *3 (S.D.N.Y. Oct. 22, 2004) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)).

Plaintiff alleges that Brookhaven acted jointly with the Suffolk County police efforts, in a conspiratorial manner to deprive decedent of his civil rights in two ways, specifically: (1) by conspiring not to provide prompt medical treatment to Cox upon his arrival at the hospital; and (2) by assisting in a "cover up" of the officers' use of excessive force, by (a) failing to adequately depict decedent's injuries in various hospital records; and (b) by being allegedly involved in fabricating the discovery of cocaine in Cox's possession, to allow the Suffolk County Medical Examiner to claim that cocaine was the cause of Cox's death. For the reasons set forth below, the Court finds that plaintiff's arguments for the application of the joint action doctrine are without merit and there is insufficient evidence for this claim to survive summary judgment.

### a. Alleged Conspiracy to Deprive Plaintiff of Alleged Medical Care

First, the Court rejects plaintiff's argument that the joint action doctrine should apply because Brookhaven was engaged in a conspiracy with the police officers to delay provision of medical care, because beyond plaintiff's conclusory allegations, there is insufficient evidence from which a rational jury could conclude that Brookhaven *willingly* participated in the delay. Specifically, no reasonable jury could find on the current record that Brookhaven shared the common goal, where it is undisputed that decedent was in the custody of eight to ten police officers from arrival at the hospital through the events occurring in the trauma room, and that the hospital staff made attempts to access Cox by requesting he be released from police

restraints and turned over so that he could be put on a hospital stretcher to be evaluated treated, but the police officers refused until hospital restraints were obtained. *See, e.g., Harvey v. Plains Twp. Police Dept.*, 421 F.3d 185, 195-196 (3d Cir. 2005) (finding that private landlord defendant was not acting under "color of state law" based on joint action because private party was not a *willful* participant; "a private citizen acting at the orders of a police officer is not generally acting in a willful manner, especially when that citizen has no self-interest in taking the action"). Plaintiff argues that the hospital staff should have pushed back on the officers' orders, or provided treatment anyway, but even assuming *arguendo* that the staff could have successfully overcome the officers' orders, this speculation does not undercut the undisputed record evidence that the hospital staff attempted to provide medical care, in contravention of the alleged unconstitutional goal of the police officers. Beyond plaintiff's conclusory assertions of a conspiracy in this respect , there is simply no competent evidence from which a reasonable jury could determine that Brookhaven "shared the common, unconstitutional goal" of depriving Cox of medical treatment. *Bang*, 923 F. Supp. at 49. Accordingly, plaintiff's claim under this theory cannot survive summary judgment.

b. Alleged Conspiracy to Cover Up Excessive Force by Officers

As a threshold matter, the Court notes that in the amended complaint, plaintiff fails to allege that Brookhaven was involved in a conspiracy to cover up the police officers' use of excessive force.[6] Although the Court will address this new claim, the Court notes that plaintiff's failure to include these allegations

---

[6] The only paragraph containing specific allegations regarding plaintiff's claim against Brookhaven under § 1983 is plainly related to failure to render adequate medical treatment:

> Upon information and belief, the defendant BROOKHAVEN HOSPITAL, their agents, employees and/or servants violated the rights of JOHN COX to equal protection under the law, as secured to him under the Fourteenth Amendment and 42 U.S.C. § 1983, as said defendants were careless, negligent and reckless in the care and treatment of JOHN COX in failing to have properly trained personnel attend to him in the emergency room and/or hospital; in failing to administer adequate resuscitative efforts to JOHN COX; in administering resuscitative efforts in a reckless and careless manner; in failing to attempt to use a defibrilator on JOHN COX in a timely manner; in inadequately performing cardiopulmonary resuscitation on JOHN COX; in failing to treat JOHN COX and instead neglecting him upon his being brought into said defendant hospital.

(Am. Compl. ¶ 118.) Brookhaven is noticeably absent from the allegations in the following paragraph, regarding the alleged "cover up" of the officers' alleged use of excessive force:

> Defendants COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, FITZPATRICK, OFFICE OF THE SUFFOLK COUNTY MEDICAL EXAMINER, and WETLI and/or WILSON have engaged in and have attempted to coverup the wrongful actions, abuses, use of improper and excessive force and deployment of weapons, and have further engaged in and attempted to cover-up the defendants' inadequate rescue efforts/failure to provide proper medical attention . . .

(*Id.* ¶ 119.)

in the complaint renders the allegations improper. *See, e.g., Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y.1997) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint. Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion."); *see also DeFilippo v. N.Y.S. Unified Court Sys.*, 223 F. App'x 45 at 46 (2d Cir. 2007) ("[T]he District Court did not abuse its discretion in prohibiting DeFilippo from raising a due process claim for the first time in his opposition to defendants' summary judgment motion."); *DeCastro v. Lahood*, No. 04-CV-2129 (JMA), 2009 WL 1067030, at *8 (E.D.N.Y. Apr. 21, 2009) ("[I]t is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y. 2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'") (citations omitted) (collecting cases). For the reasons stated below, the Court finds that even if plaintiff had properly alleged Brookhaven's involvement in the conspiracy such that it could have "fair notice" to prepare a meaningful defense, there is insufficient evidence in the record from which a reasonable jury could find that the joint participation exception to the state action requirement should apply, based on such an alleged conspiracy.

First, plaintiff's argument that Brookhaven jointly engaged in a "cover up" to conceal alleged excessive force by not adequately documenting decedent's injuries in various reports is not supported, and in fact is belied, by the record evidence. One of the reports cited by plaintiff as being deficient, the Triage/Nursing Report, specifically indicates that Cox was subjected to five Taser shots by Suffolk County police officers. (Pl.'s Ex. K; Def.'s Ex. C.) In addition, the Emergency Physician Record completed by Dr. Sachter notes external abrasions to Cox. (Def.'s Ex. C.) Although plaintiff protests the extent to which the hospital staff described Cox's injuries, and alleges other minor mistakes,[7] such isolated mistakes or technical omissions in paperwork–which are practically inevitable to some extent in documents prepared in the context of providing emergency medical treatment–are simply not probative of wilful, joint participation in a conspiracy to cover up excessive police force particularly where, as here, it is *undisputed* that these reports included direct evidence regarding officer use of force.

Similarly, the Court finds that there is insufficient evidence on the record to support a finding by a rational jury that Brookhaven engaged in a joint conspiracy with the Suffolk County police officers to "cover up" the excessive force by allegedly assisting the county defendants to attribute Cox' death to cocaine use. In support of this alleged conspiracy, plaintiff argues that the evidence indicates that: (1) Nurse Orlando may have violated Brookhaven's procedures in the manner in which he discovered cocaine in the decedent's wallet; and (2) Dr. Sachter

---

[7] Plaintiff points to various alleged errors, including that the nursing staff took information from the police officers (although the statements were attributed to the police officers themselves) and that some of the times on the reports were approximated.

12

requested a urine toxicology report, but one was never actually conducted by the Brookhaven lab.[8] This evidence, however, is at best only probative of a couple of errors in procedure on the part of Brookhaven, and plaintiff otherwise offers nothing but conclusory allegations of an agreement between Brookhaven employees and the police officers.

Plaintiff has failed to indicate any evidence, apart from raw speculation, that the police officers were involved in the alleged hospital errors regarding cocaine. Specifically, plaintiff has failed to produce any evidence on the record from which a reasonable jury could infer a meeting of the minds between Nurse Orlando and the police officers for Orlando to search the decedent's wallet in the course of his duties and report the discovery of cocaine. Plaintiff's mere allegation of the police officers' involvement with Orlando is that they received the cocaine from him while in the trauma room, and received a statement from him regarding the discovery. However, it is well-settled that the provision of information to police officers by a private party, *even if false*, does not constitute concerted action for the purposes of the joint action exception to the § 1983 state action requirement. *See Gindberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) ("[Providing] information to a police officer does not by itself make [defendant] a joint participant in state action under Section 1983."); *see also Middleton v. City of N.Y.*, No. 04-CV-1304 (JFB), 2006 WL 1720400, at *8 (E.D.N.Y. June 19, 2006) (noting that providing information to police, even if false, does not indicate that private defendant acted in concert with state in filing complaint); *D'Agostino v. N.Y. State Liquor Auth*, 913 F. Supp. 757, 770 (W.D.N.Y. 1996), *aff'd*, 104 F.3d 351 (2d Cir. 1996). Likewise, plaintiff has failed to point to anything in the record, other than conclusory speculation, from which a finder of fact could reasonably determine that the Brookhaven Lab's failure to conduct one of nine tests requested by Dr. Sachter, is related to a conspiracy with the state.

Overall, the record is bereft of evidence of actual conspiracy, and plaintiff offers no more than insufficient "innuendo, unrelated incidents and conclusory allegations." *Adler v. Pataki*, 204 F. Supp. 2d 384, 396 (N.D.N.Y. 2002); *see also Blount v. Swiderski*, No. 03-CV-0023 (ENV), 2006 WL 3314635, at *19 (E.D.N.Y. Nov. 14, 2006) (granting summary judgment where no reasonable jury could find the existence of an actual conspiracy from circumstantial evidence available on the record). Absent any evidence—other than plaintiff's conclusory assertions—to demonstrate a plan, prearrangement, conspiracy, custom, or policy between

---

[8] The Court notes that neither of these alleged errors by Brookhaven staff contributed to the finding of the Office of the Suffolk County Medical Examiner that Cox had cocaine in his system on the evening of his death. The autopsy report prepared by the medical examiner included its own toxicology report, which found that Cox had a level of 0.12 mg/L of cocaine in his femoral blood, a level of 0.57 mg/kg of cocaine in his brain, and that cocaine was present in his liver. (Def.'s Ex. P.) The findings of the autopsy report do not mention or rely upon statements made by Nurse Orlando to the Suffolk County Police Department, and did not rely on any medical tests conducted by Brookhaven. (*Id.*) Plaintiff merely *speculates* that had Brookhaven conducted the urine toxicology test requested by Dr. Sachter, a negative result might have resulted for cocaine, which could then have been used to impeach the findings in the independent toxicology report prepared by the Suffolk County medical examiner.

13

Brookhaven and the officers, there is an insufficient basis for a rational jury to find joint action with the state for the purposes of § 1983. *See, e.g., Vazquez*, 2004 WL 2404224, at *4 (evidence of private party report to police not sufficient to demonstrate joint action with state, where plaintiff did not provide any other evidence of agreement or concerted action other than conclusory allegations). Accordingly, any claim against Brookhaven based on this theory cannot survive summary judgment.

### 4. Conclusion

In sum, even crediting plaintiff's evidence and drawing all reasonable inferences in her favor, there is insufficient evidence from which a rational jury could find that Brookhaven was acting under "color of state law" for the purposes of 42 U.S.C. § 1983. Accordingly, summary judgment is granted with respect to all claims alleged against Brookhaven under § 1983.

### B. Plaintiff's Claims Arising Under 42 U.S.C. §§ 1981, 1985, and 1986

Plaintiff also alleges that Brookhaven discriminated against Cox in violation of 42 U.S.C. §§ 1981, 1985, and 1986. As set forth below, summary judgment is warranted because plaintiff has simply relied on conclusory allegations and has provided no evidence of discriminatory intent on the part of the Brookhaven that would allow any of these claims to survive summary judgment.

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1998) ("Essential to an action under Section 1981 are allegations that the defendants' actions were purposefully discriminatory, and racially motivated."). Plaintiff's claim fails as a matter of law because she has not produced *any* evidence indicating that Brookhaven had the intent to discriminate based upon race, other than noting that Brookhaven was *aware* that Cox was an African-American and a conclusory allegation that their acts were discriminatory. *See, e.g., Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 339 (2d Cir. 2000) (dismissing § 1981 claim for failure to adequately allege discriminatory intent); *Washington v. City of New York*, No. 05-CV-8884 (LAP), 2009 WL 1685947, at *7 (S.D.N.Y. June 5, 2009) (granting summary judgment dismissing § 1981 claim where plaintiff had no evidence of discriminatory animus other than speculation and conclusory allegations); *accord Nasca v. Town of Brookhaven*, No. 05-CV-0122 (JFB), 2008 WL 4426906, at *15 (E.D.N.Y. Sept. 25, 2008); *Carson v. Lewis*, 35 F. Supp. 2d 250, 269 (E.D.N.Y. 1999) ("[N]aked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory. . ."). Because a reasonable jury could not find that Brookhaven intended to discriminate based on race merely because of their awareness that Cox was African-American, summary judgment for Brookhaven on the Section 1981 claim is appropriate.

Section 1985(3) prohibits two or more persons from conspiring for the purpose of

depriving any person of the equal protection of the laws, or of equal privileges and immunities under the laws.[9] In order to establish a claim under § 1985(3), plaintiff must establish four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian*, 7 F.3d at 1087. The conspiracy must be motivated "by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)). As with the § 1981 claim, plaintiff only offers conclusory allegations that the actions involved discriminatory animus, merely asserting that Brookhaven knew that Cox was both African-American and disabled. Because there is no evidence of racial or other class-based animus on the record, Brookhaven is entitled to summary judgment on plaintiff's § 1985 claim. *See Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996) (holding that district court properly granted summary judgment dismissing § 1985 claim where plaintiff only offered conclusory allegations of racial discrimination); *Nasca*, 2008 WL 4426906, at \*15 (granting summary judgment, dismissing § 1985 claim based on lack of evidence on record of any racial or class-based animus); *accord Datri v. Inc. Vill. of Bellport*, No. 04-CV-3497 (DRH), 2006 WL 2385429, at \*7 (E.D.N.Y. Aug. 17, 2006), *aff'd,* 308 F. App'x. 4665 (2d Cir. Sept. 11, 2008).

Finally, Brookhaven is also entitled to summary judgment on plaintiff's § 1986 claim because it is well-settled that "a § 1986 claim must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088. Because the Court has found that plaintiff's § 1985 claim against Brookhaven must be dismissed, the § 1986 claim must be dismissed as well. *See Nasca*, 2008 WL 4426906, at \*15 (dismissing § 1986 claim where no valid § 1985 claim existed); *accord Lehman v. Kornblau*, 134 F.Supp.2d. 281, 289 (E.D.N.Y. 2001); *Altschuler v. Univ. of Pa. Law School*, No. 95-CV-0249 (LLS), 1997 WL 129394, at \*17 (S.D.N.Y. Mar. 21, 1997); *Augustine v. Reid*, 882 F.Supp. 50, 54 (E.D.N.Y.1995).

Accordingly, summary judgment for Brookhaven is warranted on plaintiff's claims arising under 42 U.S.C. §§ 1981, 1985, and 1986.

---

[9] Although plaintiff has failed to specify which subsection of 42 U.S.C. § 1985 he brings his claim under, it is clear from the facts that only § 1985(3) would be potentially applicable to the present case.

### C. New York State Law Claims[10]

Plaintiff alleges claims against Brookhaven for negligence and wrongful death under New York state law. For the reasons discussed below, the Court finds that summary judgment is warranted, dismissing the state law claims against Brookhaven.

The parties agree that plaintiff's claims are governed by the New York standard for medical malpractice, which requires a plaintiff to prove: (1) a deviation or departure from accepted medical practice; and (2) that such departure was the proximate cause or injury or damage. *Estiverne v. Esernio-Jennsen*, 581 F. Supp. 2d 335, 350 (E.D.N.Y. 2008) (citing *Wiands v. Albany Med. Ctr.*, 29 A.D.3d 982, 983 (N.Y. App. Div. 2008)). In these cases which arise from medical acts or omissions, "[e]xpert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause." *Dunn v. Kahn*, 62 A.D.3d 828, 829 (N.Y. App. Div. 2009); *Cregan v. Sachs*, 879 N.Y.S.2d 440, 446 (N.Y. App. Div. 2009) ("'To establish what the existing standard is or that there has been a departure from it, because laymen ordinarily are not deemed possessed of a sufficient knowledge, training or experience to have attained the competence to testify on this subject, a plaintiff nearly always will be required to produce expert testimony.'") (quoting *Topel v. Long Is. Jewish Med. Ctr.*, 55 N.Y.2d 682, 689 (N.Y. 1981)).

In the instant case, the only expert testimony provided regarding the applicable standard of care was provided by defendant, through the affidavit of Dr. Thomas Kwiatkowski. (Def.'s Ex. S.)[11] In that

---

[10] Although the Court has dismissed all the federal claims against Brookhaven, the Court continues to possess supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the claims alleged under New York state law against the remaining defendants because federal claims remain against remaining defendants (such as the claims under § 1983 against the county and police officer defendants), and those claims "form part of the same case or controversy," as the state law claims against Brookhaven. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (vacating dismissal of state law claims against defendant where § 1983 claim remained against other defendants) (citing 28 U.S.C. § 1367(a) ("[S]upplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.")).

[11] At oral argument on August 24, 2009, plaintiff requested an opportunity to submit expert testimony regarding the standard of care provided by defendant Brookhaven—namely, Dr. Lone Thanning would provide expert testimony that the care provided by Brookhaven was insufficient. Although the Court granted plaintiff's request, the Court agrees with the parties that plaintiff's subsequent expert submissions are unrelated to defendant Brookhaven. First, plaintiff's expert submissions filed on November 24, 2009, including the declaration of Dr. Thanning, were not submitted in opposition to Brookhaven's motion for summary judgment; rather, the expert submissions were included within plaintiff's supplemental declaration in support of plaintiff's memorandum of law in opposition to South Country Ambulance Company's motion for summary judgment. Second, having reviewed the submissions related to plaintiff's experts, including the declaration by Dr. Lone Thanning and an expert report by Dr. John L. Coulehan, the Court concludes that neither submission addresses the standard of care by Brookhaven. (*See* Def.'s Sur-Reply at 3-4.) Finally, as noted *supra*, at the conference held on November 10, 2010, plaintiff agreed that this matter is fully submitted and that the above-referenced expert submissions, along with the anticipated expert submissions related to the ongoing discovery—including plaintiff's

affidavit, Dr. Kwiatkowski, in reviewing the evidence in the case, including *inter alia*, depositions, documentary evidence and surveillance footage from Brookhaven, opines that "no deviation from the standard of care was evident in the care and treatment rendered to [Cox]." (*Id.* at ¶¶ 2, 4, 7.) Specifically, Dr. Kwiatkowski opines that, *inter alia*: (1) adequate staff was involved; (2) the patient could not be adequately evaluated and treated until he was turned over and released from police restraints; (3) the hospital staff did not control the circumstances or timing of providing care to decedent, because of the actions of the police officers; and (4) that the hospital staff's response to Cox's cardiac arrest was "both appropriate and aggressive, meeting all relevant standards of care." (*Id.* at ¶ 7.) Dr. Kwiatkowski also concludes by noting that "nothing that the hospital staff and personnel did or did not do was a substantial factor or proximate cause in causing this patient's claimed injuries." (*Id.*) Because Brookhaven has submitted competent medical expert testimony, attesting that there was no deviation from the standard of care, it has proven prima facie entitlement to judgment as a matter of law, and "the burden shifts to the plaintiff to demonstrate a triable issue of fact by submitting an expert's affidavit attesting to a departure from accepted practice and containing an opinion that the defendant's acts or omissions were a competent producing cause of the injury." *Vera v. Soohoo*, 41 A.D.3d 586, 587 (N.Y. App. Div. 2007).

---

intention to replace Dr. Thanning with Dr. William L. Manion—are not related to defendant Brookhaven. Therefore, the Court concludes, for the reasons stated below, that the only expert testimony in the record regarding the applicable standard of care was provided by defendant Brookhaven, through the affidavit of Dr. Thomas Kwiatkowski.

Plaintiff argues, however, that she is not required to submit expert testimony regarding the standard of care, because she claims that the deposition of Dr. Sachter constitutes competent evidence that the appropriate standard of care was not followed in this case. The Court disagrees. Dr. Sachter was a fact witness, that was not personally involved in the events related in this lawsuit until after Cox was released from police restraints, and discovered to be in cardiac arrest, and following the commencement of resuscitative efforts. Although Dr. Sachter did make scattered references during his testimony to the fact that, generally, vital signs should be taken "as soon as possible," (Pl.'s Ex. H at 54) and that a pulse oximeter "may or may not" be applied to a patient in prone position "depending on the position of their arms and hands" (Pl.'s Ex. H at 43), these stray remarks do not sufficiently establish what the overall standard of professional care is, or that there has been a departure from it, for the circumstances presented in this case—namely, the evaluation and treatment of a patient in police custody where officers refuse to release the patient until hospital restraints are retrieved. *See, e.g., Tanel v. Kreitzer & Vogelman*, 293 A.D.2d 421-22 (N.Y. App. Div. 2002) (summary judgment required where defendant produced expert testimony regarding standard of care and plaintiff only "pointed fleetingly to deposition testimony" regarding issues which were insufficient to put the appropriate standard of care at issue); *see also Conti by Conti v. Albany Med. Ctr. Hosp.*, 159 A.D. 2d 722, 775 (N.Y. App. Div. 1990) (granting summary judgment on medical malpractice claims where plaintiff's opposition to defendant's expert testimony only included attorney affidavit, hospital records and excerpts from deposition transcripts; "[s]ignificantly absent from the record is a competent medical opinion that

any of the physicians named as defendants or the hospital or any of its employees were guilty of malpractice or negligence").

Apart from referencing Dr. Sachter's deposition, plaintiff only makes conclusory assertions that the Brookhaven defendants departed from the relevant standard of care. This plainly does not satisfy plaintiff's burden to produce competent medical evidence regarding deviation from the standard of care and causation, and summary judgment is therefore appropriate. *See Dunn*, 62 A.D.3d at 829 (holding that defendant doctor established entitled to judgment as a matter of law by submitting expert evidence that good practices were followed, controverted only by conclusory evidence submitted by plaintiff); *Barila v. Comprehensive Pain Care of Long Island*, 44 A.D.3d 806, 807 (N.Y. App. Div. 2007) (same).

Accordingly, summary judgment is granted on plaintiff's state law claims as against Brookhaven.

### IV. CONCLUSION

For the foregoing reasons, Brookhaven's motion for summary judgment is granted in its entirety. The Clerk of the Court shall terminate Brookhaven as a defendant from this civil action.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 27, 2011
Central Islip, New York

\* \* \*

The attorney for plaintiff is Frederick K. Brewington, Esq. of the Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, NY 11550. The attorneys for defendant Brookhaven Memorial Hospital Medical Center is Marcy D. Sheinwold, Esq. and Christina L. Geraci, Esq., of Lewis Johs Avallone Aviles, LLP, 425 Broad Hollow Road, Melville, NY 11747.